**OKLAHOMA NAT. BANK OF OKLAHOMA CITY et al. v. GREAT LAKES INS. CO.**

No. 10091.

United States Court of Appeals
Seventh Circuit.

May 25, 1950.

Frantz C. Conrad, Oklahoma City, Okl., for appellant.

Victor E. La Rue, Ruth L. Leffler, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

In February, 1944, defendant, a legal reserve life insurance company, entered into an employment contract with plaintiff, whereby the latter was employed as "Sales Executive" or "Superintendent of Agents" for a one-year period beginning March 6, 1944. Campbell, in addition to superintending defendant's sales development program, agreed to "undertake to produce as much personal business as possible," though he was not to receive commissions on such activity. The contract provided, however, that Campbell, who was to be paid a salary of $350 per month, plus travelling expenses, would receive "additional compensation in the nature of a bonus * * * upon all the business written * * *" by the defendant during Campbell's tenure of employment; and that this "compensation" or "bonus," caculated at the rate of

$1.00 per thousand dollars for the first $5,000,000 of business, $.75 per thousand for the second $5,000,000, and $.50 per thousand for the excess over $10,000,000, would be paid to him annually, for a period of ten years, computed on the basis of the volume of business remaining in force. A second contract, substantially like the first except that plaintiff's salary was increased from $350 to $500 per month and his term of employment from one to three years, was executed on June 1, 1945, a short time after the expiration of the first agreement. This action, based on those contracts, was instituted by Campbell to collect the bonuses or commissions which he contends are due him under the terms thereof.[1]

The case was submitted to the District Court on an agreed statement of facts, in which the parties stipulated that Campbell had performed all the duties required of him under the terms of the aforementioned contracts, and that defendant had fulfilled its obligations, except that, since the termination of Campbell's employment by it, it had declined to pay him the "additional compensation" provided for in the contracts, taking the position that those agreements violate Section 857 of the Illinois Insurance Code (which prohibits an insurance company subject to the statute from contracting to pay a salaried employee any compensation which will extend beyond a period of three years from the date of the contract), and are, for that reason, void and unenforceable. It was further stipulated that "the sole matter at issue * * is as to whether said contracts * * * are valid and enforceable * * * or * * * illegal and unenforceable * * * under the provisions of the Insurance Code of Illinois of 1937."

The District Court, finding that, "Although plaintiff was a licensed agent of defendant company and did produce a small amount of business, the principal purpose of his employment was not to solicit, negotiate or effect insurance personally, but to manage and supervise the affairs of the company, including the 'training of agents to solicit business for the company' and 'assisting the agents in selling insurance who were paid the commissions,'" concluded that "Plaintiff was not, during his term of employment, an 'agent' of defendant company within the exception of Section 857, Chapter 73, Smith-Hurd Ill.Rev. Stat., but a 'salaried employee,' with whom the company was, by Section 857, prohibited from making an agreement for payment of compensation extending beyond a period of three years from date of the agreement." The court found further that, "at the time of the making of the illegal contract * * * dated June 1, 1945, plaintiff was a member of the board of directors of defendant company and is equally guilty with defendant in the making of said contract * * *." It concluded that the contracts "are expressly prohibited by Section 857, and their making constitutes a misdemeanor under Section 1058, Chapter 73, Smith-Hurd Ill.Rev.Stat., and they are therefore illegal and void and no recovery can be had thereon," and entered judgment for defendant. From that judgment, plaintiffs have appealed, contending that the court below erred in holding that Campbell was not an agent of the defendant within the contemplation of the Illinois Insurance Code, in finding that Campbell was equally guilty with the defendant in the making of the contract of June 1, 1945, and in adjudging the contracts void and unenforceable.

The statutory provisions material to a determination of the principal issue presented by this appeal are Sections 857 and 588, Chapter 73, Ill.Rev.Stats., which read, in pertinent part, as follows:

"857. * * * No * * * domestic life company shall make any agreement with any of its officers, trustees or salaried employees whereby it agrees that for any services rendered or to be rendered he shall receive any salary, compensation or emolument, directly or indirectly, that will extend beyond a period of three years from the date of such agreement; * * *. The limitation as to time contained herein shall not be construed as

---

[1]. The Oklahoma National Bank, which accepted an assignment of the moneys to be paid Campbell under the terms of the contracts as collateral security for a loan to him, is joined as a party plaintiff.

preventing a domestic company from entering into contracts with its agents for the payment of renewal commissions. * * *"

"588. * * * The term 'agent', as used in this Act, means any person, partnership, association or corporation, who or which solicits, negotiates or effects in this State, on behalf of any company, contracts for insurance of any of the following kinds, namely:

"Life * * *."

Since it is clear that Campbell was a salaried employee of the defendant and that the contracts in question provide for the payment to him of a form of compensation which extends well beyond the period of three years from the respective contract dates, it follows that the contracts are invalid *unless* Campbell was an "agent" of the defendant and the agreements are "contracts * * * for the payment of renewal commissions." The District Court decided that, although Campbell was a licensed agent of defendant, and although he personally wrote $139,000 in life insurance, he was not an agent within the meaning of the statute, for the reason that "the principle purpose of his employment was not to solicit, negotiate or effect insurance personally, but to manage and supervise the affairs of the company * * *." However, it is to be observed that the statutory definition of the term "agent" is not limited to one whose principal purpose of employment is to solicit, negotiate or effect contracts for insurance, nor is it limited to one who personally solicits, negotiates or effects such contracts; it simply provides that "any person * * * who * * * solicits, negotiates or effects * * contracts for insurance * * *" is an agent, for the purposes of the statute. To say that one who is in charge of the entire sales program of an insurance company, who superintends the activities of all the agents of that company, and who is himself a licensed agent of that company and writes some policies is not engaged in soliciting, negotiating, or effect-

ing the sale of insurance, seems to us to be a highly unrealistic conclusion. Moreover, even if the word "personally" were read into the statute, as it apparently was by the District Court, still, we think, that court's conclusion that Campbell was not an agent for the purposes of the exemption clause in Section 857 would be erroneous, for Campbell did personally solicit, negotiate or effect insurance in the amount of $139,000, and Section 857 nowhere indicates that renewal commissions are payable only on the insurance personally sold by the agent. Nor does it preclude a division of the renewal commission between the agent who personally makes the sale and the supervisory agent under whose direction he acts, which is, in effect, what was provided in this case.

The District Court also held that, because Campbell was a member of the defendant's board of directors on June 1, 1945, the date of the execution of the second contract, he was equally guilty with the defendant in entering into that contract, the making of which, the court found, was prohibited by Section 857 and constituted a misdemeanor under Section 1058, Chapter 73, Ill.Rev.Stats. Although it is difficult to determine upon which provision of Section 857 the court relied in concluding that the contract was prohibited by that Section, we shall assume that its decision rests on the provision that "no * * * director * * * who is paid a salary for his services of more than two hundred dollars per month shall receive any other compensation or emolument * * *," for, in view of our conclusion that Campbell was an agent of defendant within the meaning of the statute, the decision could not properly rest on the provision which prohibits an insurance company from contracting to pay, to one of its salaried employees, any salary, compensation or emolument which continues beyond a period of three years from the date of the contract, since the agreements here involved fall within the exception to that prohibition.[2] In determining whether the

2. It might be pointed out that, even though Campbell had not been an agent of the

the defendant, it does not follow that he would have been equally guilty with the

contract was invalidated by this provision relative to the receipt of additional compensation by one who is a director, it is significant that Campbell was not a member of the defendant's board at any time during the life of that contract, or, for that matter, during the life of the first contract involved in this case. He was elected director on March 26, 1945, some three weeks after the termination date of the first contract, and, on June 28, 1945, he submitted his resignation, which became effective July 1, 1945, the date on which the second contract went into effect. True, the second contract was executed while Campbell was a member of the board, but it did not become operative until after his resignation from the board. Moreover, there is nothing to indicate that, during his tenure as a director, Campbell ever received any compensation other than his monthly salary, and only the actual receipt of such compensation is prohibited by the statute.[3] That the parties were, in fact, aware of the statute and that Campbell's resignation was submitted for the express purpose of complying with its terms is evident, for the defendant's own record reveals that, at the meeting at which Campbell's resignation was tendered and accepted, "It was stated that in view of the increase in Mr. Campbell's salary, as of July 1, and *by reason of the fact that he does receive a bonus upon business in force, under his contract, he would be disqualified to act as director.*" (Emphasis supplied.) Thus, it seems clear that the fact that Campbell was a director at the time of the execution of the second contract does not invalidate the contract, which did not go into effect until after his resignation from that office, and that neither its execution nor, so far as the record shows, Campbell's conduct while a member of defendant's board can be said to have

constituted a misdemeanor under Section 1058.

The District Court's conclusion that the contracts are illegal and unenforceable cannot be sustained, either on the theory that Campbell was not an agent of the defendant for the purposes of the exemption in Section 857, or on the theory that, because he was a director, he was prohibited from entering into such a contract. Consequently, the judgment is reversed, with directions to the District Court to enter judgment for plaintiffs for the commissions due Campbell under the terms of the contracts sued on.

---

defendant in entering into such a contract, for the statutory provision ( "No such life insurance company shall make any agreement * * *" ) is operative only against the insurance company, and not against the individual with whom it contracts. In such a case, it has been held that, though the contract is illegal and void, the parties are not in pari delicto.

Akers v. Mutual Life Ins. Co. of N. Y., 59 Misc. 273, 112 N.Y.S. 254.

3. At no time in the period during which Campbell served as a director (March 26-July 1, 1945) was he ever entitled, under the terms of the first contract, to any renewal commissions, for the contract specified that those commissions were payable only at the end of the calendar year.