WILLIAM E. SHORTEN, Plaintiff, *v.* ALBERT G. MILBANK and Others, Defendants.

Supreme Court, Special Term, New York County, March 1, 1939.

*Kadel, Shields & Weiss,* for the plaintiff.

*Milbank, Tweed & Hope,* for the defendants.

ROSENMAN, J. Motion by defendants Milbank, Tweed, Hope, Edna C. Plant and others to dismiss the complaint for insufficiency under rule 106 of the Rules of Civil Practice is granted.

This is an action for services rendered by the plaintiff as a private investigator.

The only question involved is whether the plaintiff must plead that he was duly licensed under section 70 of the General Business Law in order that his complaint state good causes of action. This simmers down to whether the contracts, which violate the statutory provisions relative to a license and which are sought to be made the bases of this action, are *malum in se* or merely *malum prohibitum;* if the former, the plaintiff must plead and prove his compliance with the statute; if the latter, no such allegation is necessary. (*Rosasco Creameries, Inc.,* v. *Cohen,* 276 N. Y. 274.)

It may be readily inferred from the complaint that plaintiff was regularly engaged in the business of investigator for hire or reward. That being so, it was incumbent upon him to procure a license under section 70, *supra,* as a prerequisite to his engaging in such business. Although that type of business has been recognized as a lawful occupation, it is constitutionally subject to regulation by the State in the exercise of its police powers (*Lehon* v. *City of Atlanta,* 242 U. S. 53), especially because of the evils attendant on such business (*Norwood* v. *Ward,* 46 F. [2d] 312). " What the statute was aimed at was regulation and control of those conducting the business of private detectives. * * * Certain evils and abuses growing out of the employment [of such private detectives] * * * had from time to time attracted the attention of the public, and evidence from such sources had frequently received unfavorable comment from the courts. Properly conducted by responsible persons, much of the investigation conducted by such agencies was legitimate and necessary and, therefore, it was that the Legislature undertook to regulate and control this business in the public interests." (*Fox* v. *Smith,* 123 App. Div. 369 [dis. op. p. 374, upon which the judgment was reversed in 197 N. Y. 527].)

This remedial statute, therefore, must be construed to advance the purpose for which it was enacted. " Statutes made for the public good * * * are to receive a very liberal construction, and to be expounded in such a manner, as that they may, as far as possible, attain the end. The rule is, that they are to be so construed, as not to advance a private and destroy the public

interest, but always to advance the public interest, doing as little damage as possible to the private interest." (*Jerome* v. *Ross*, 7 Johns. Ch. 315, 342.)

In examining the entire article 7 of the General Business Law to arrive at the legislative intent with respect to section 70 thereof, we find that to apply for a license a person must divulge much of his personal background and have at least five sponsors, etc. (§ 72), must submit to an examination by the Secretary of State, upon request, for the "purpose of investigating the character, competency and integrity" of said applicant (§ 73), must furnish a bond, cannot have been convicted of a felony or certain misdemeanors (§ 74), etc. All of these provisions have for their purposes the protection of the public at large; to prevent from engaging in that business disreputable, incompetent persons who would prey upon the public. In keeping with these purposes renewals of licenses have been refused where the applicant during the previous license period had been convicted of a crime. (*Matter of Eisman*, 34 State Dept. Rep. 365; *Matter of Levy*, 36 id. 32.) Article 7 does not have a section similar to section 442-d of the Real Property Law contained in article 12-A of that law, although the latter article was promulgated to prevent evils similar to those existing in this profession. (*Roman* v. *Lobe*, 243 N. Y. 51, 54.) But even in its absence, the basic principles persist: the business is *malum in se* without a license from the State. (See, for example, *Dinan Co., Inc.*, v. *Slater*, 132 Misc. 454; affd., 223 App. Div. 750, where there was no similar section as to engineers, yet the court held that pleading the license was a condition necessary to the maintenance of an action; *Allen* v. *Brice*, 165 Misc. 181, where the court reached a similar conclusion with respect to employment agencies; *Johnson* v. *Dahlgren*, 166 N. Y. 354, with respect to master plumber.)

The Court of Appeals in adopting the dissenting opinion in *Fox* v. *Smith* (123 App. Div. 369) impliedly held that a license was a condition precedent to an action for a detective's services. The only question there involved and discussed was whether or not a single act constituted doing business. It was assumed by the court that if such act did constitute doing business a license was necessary to be pleaded and proved in an action. In the present case it is clear that a business was being conducted within the statute.

The cases of *Bovino* v. *Berberian* (255 App. Div. 143) and *Farber* v. *Aquino Sons, Inc.* (253 id. 600) do not conflict with the conclusions above reached.

In the *Bovino* case the court relied on that statement by the Court of Appeals in *Rosasco Creameries, Inc.,* v. *Cohen (supra)* that "Nothing in this statute reveals an implied intent to deprive unlicensed dealers of the right to recover the reasonable value of the milk sold by them, and where the wrong committed by the violation of the statute is merely *malum prohibitum*, and *does not endanger health or morals*, such additional punishment should not be imposed unless the legislative intent is expressed or *appears by clear implication*." In the statute involved in this case the legislative intent to protect the public from the possible fraudulent, improper and subversive acts of incompetent and immoral persons " appears by clear implication."

In the *Farber* case the court acknowledges the difference in strictly regulatory and revenue producing statutes from those intended to safeguard the public from unlawful practices by saying (at p. 601): " These [licensing] provisions are primary revenue laws which have repeatedly been held not to render a civil contract unenforcible."

Plaintiff may serve an amended complaint, if possible, within ten days after service of a copy of this order with notice of entry thereof, upon payment of ten dollars costs.